IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JUDITH A. WAGNER, Chapter 11 Trustee
of the Bankruptcy Estate of the Vaughan
Company, Realtors,**

      **Plaintiff,**

vs.                                      **No.  CV-12-817 WJ/SMV
(Master Case No.)**

**WILLIAM GALBRETH, et al.**

                                                 (USDC Case No. 12-cv-728 WJ/SMV)

      **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss, **(Doc. No. 5)[1]**, filed July 16, 2012.  Having considered the parties' briefs and the applicable law, the Court finds that Defendants' motion is partially well-taken and is therefore GRANTED in part and DENIED in part.

### Background

This case arises out of a Ponzi scheme perpetrated by Doug Vaughan.  This adversary proceeding is one of many adversary proceedings initiated by the Chapter 11 Trustee seeking to recover payments made by Vaughan Company Realtors ("VCR") to parties who invested in VCR's promissory note program.  Below is a summary of the claims brought against Galbreth Defendants.[2]

---

[1]  This document number refers to the original case (USDC No. 12CV728).  All of the adversary proceedings regarding Doug Vaughan have now been consolidated under the Master Case No. 12CV817.
[2]  The background facts underlying this matter have been extensively discussed by this Court in numerous opinions entered in the Master Case No. 12CV817.  This opinion will refer to the Galbreth Defendants collectively and will only refer to specific defendants where a distinction is necessary.

Count 1[3]      Turnover and Accounting under 11 U.S.C. § 542;

Counts 2-5    Actual and constructive fraud under New Mexico Fraudulent Transfer Act and/or 11 U.S.C. § 548(a)(1) based on alleged transfers to Galbreth Defendants made within two years of the date of the filing of the VCR bankruptcy case;

Counts 6-13   Actual and constructive fraud under state law, N.M.S.A. § 56-10-18(A)(1) and/or 11U.S.C § 544 based on alleged transfers to Galbreth Defendants made within four years of the date of the filing of the VCR bankruptcy case;

Count 14      Undiscovered fraudulent transfers pursuant to state and federal law; and

Count 15      Disallowance of Defendants' claims pursuant to 11 U.S.C § 502.

Defendants make four (4) different arguments in support of their motion to dismiss. First, Defendants argue Plaintiff's attempt to avoid and recover transfers to Dr. Galbreth's pension plan is impermissible under the Employee Retirement Income Security Act of 1974 ("ERISA").  Second, Defendants allege that the Complaint does not allege specific facts showing that the Galbreth 401(k) Plan itself was a transferee from whom VCR payments can now be recovered.  Third, Defendants assert the Complaint does not allege specific facts which show that VCR's transfers to Dr. Galbreth and/or the Galbreth Defined Benefit Plan were not for reasonably equivalent value.  Finally, Defendants argue that the Complaint fails to meet the heightened standard set forth in Rule 9(b) which requires a showing of actual intent to hinder, delay, or defraud under federal or state actual fraudulent conveyance laws.  The Court will address each argument in turn.

## Discussion

**I.    Legal Standard**

Fed. R. Civ. P. 12(b)(6) allows a defense for "failure to state a claim upon which relief can be granted."  In asserting a claim, the claimant must plead "only enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp.v. Twombly, 550 U.S. 544, 570 (2007). A

---

[3] Plaintiff consents to the dismissal of Count 1.

claim challenged by a 12(b)(6) motion to dismiss does not require detailed factual allegations, but must set forth "more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do." Id. at 555  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the [claimant's] complaint alone is legally sufficient to state a claim for which relief may be granted." Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). A 12(b)(6) motion should not be granted "unless it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957); see Ash Creek Mining Co. v. Lujan, 969 F.2d 868, 870 (10th Cir.1992). All well-pleaded factual allegations in the complaint are accepted as true, see Ash Creek Mining Co., 969 F.2d at 870, and viewed in the light most favorable to the nonmoving party, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

A 12(b)(6) motion must be converted to a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court" and "all parties . . . [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). The failure to convert a 12(b)(6) motion to one for summary judgment where a court does not exclude outside materials is reversible error unless the dismissal can be justified without considering the outside materials. See Brown v. Zavaras, 63 F.3d 967, 970 (10th Cir.1995). Notwithstanding these general principles, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss. GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (citations omitted).

3

The Court will not convert the instant motion into a motion for summary judgment. Plaintiff asserts that Defendant's Motion alleges facts not contained in the Complaint regarding Galbreth Defendant's intent as to the allegedly fraudulent transfers. However, the Court does not see a need to convert this Motion into a motion for summary judgment, because the Court can decide the motion without considering facts not contained in the Complaint. Accordingly, this Court will decide the motion based upon the standards set forth in Fed. R. Civ. P. 12(b)(6).

## II.     Plaintiff's Claims are not Barred by ERISA

Defendants contend that Section 206 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1056(d)(1) prohibits Plaintiff from recovering transfers to the Galbreth Defined Benefit Plan, the 401(k) Plan, and the pension plan ("collectively referred to as the "Galbreth Benefit Plans"). In response, Plaintiff argues that whether ERISA applies is an affirmative defense and/or a question of fact that cannot be answered by the Complaint alone. In the alternative, Plaintiff argues ERISA does not protect fraudulently transferred funds in contravention of the Bankruptcy Code.[4]

ERISA contains a number of provisions directed at safeguarding a stream of income for pensioners and their dependents. See generally Guidry v. Sheet Metal Workers Nat. Pension Fund, 493 U.S. 365, 376 (1990). Section 206 of ERISA, 29 U.S.C. § 1056(d)(1) mandates that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." This section is known as the "anti-alienation provision."

In general, the anti-alienation provision prohibits creditors from reaching funds in an ERISA plan as a means of collecting a judgment against a beneficiary. Guidry, 493 U.S. at 372 (ERISA's anti-alienation provision prohibits garnishment of a qualified pension plan "unless

---

[4] Because this Court finds that even if the Galbreth Benefit Plans were qualified plans under ERISA, ERISA would not prevent Trustee's recovery, this Court will not conduct an analysis of whether the Galbreth Benefit Plans are in fact qualified plans.

some exception to the general statutory ban is applicable."). The anti-alienation provision has been interpreted to exclude a debtor's interest in pension benefits from the bankruptcy estate. See Patterson v. Shumate, 504 U.S. 753, 765 (1992) (under ERISA's anti-alienation provision, "a debtor's interest in an ERISA-qualified pension plan may be excluded from the property of the bankruptcy estate pursuant to § 541(c)(2)[.]"). See also In re Reinhart, 2012 WL 1409284, *5 (10th Cir. Apr. 24, 2012) (discussing the general rule that retirement funds held in ERISA plans are not included in the bankruptcy estate). A bankruptcy trustee may not, therefore, access a debtor's interest in an ERISA plan while the funds are being held by the plan. See In re Kunz, 2005 WL 165447, *1 (10th Cir. Jan, 26, 2005) (noting that a Chapter 7 trustee may not exercise control over the debtor's interest in a qualified-ERISA plan).

Courts are highly skeptical of creating exceptions to ERISA's anti-alienation provision. See Patterson, 504 U.S. at 760 (In construing ERISA's anti-alienation provision, courts have "vigorously . . . enforced ERISA's prohibition on the assignment or alienation of pension benefits, declining to recognize any implied exceptions to the broad statutory bar."). However, there are certain situations where creditors or other parties may reach pension benefits if permitted to do so by certain federal statutes. See e.g. 26 U.S.C. § 6331(a), (c) (the IRS is authorized to levy upon all property belonging to the taxpayer, and no other federal law shall exempt property from the IRS' reach); United States v. Irving, 452 F.3d 110, 126 (2d Cir.2006) ("ERISA pension plans are not exempted from payment of taxes under 26 U.S.C. § 6334, and thus they should not be exempted from payment of criminal fines.").

Plaintiff argues that ERISA does not prevent the recovery of a fraudulent transfer into an otherwise qualified plan. The initial inquiry, however, is whether the recovery of a fraudulent transfer constitutes an alienation or assignment prohibited by Section 206 of ERISA and the

5

relevant sections of the Internal Revenue Code ("IRC").  The IRC regulations promulgated by the Secretary of Treasury, who has the authority to implement ERISA, define the terms "assignment" and "alienation."  Those regulations, which are entitled to deference under Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 844 (1984), provide:

For purposes of this section, the terms "assignment" and "alienation" include --

> (i) Any arrangement providing *for the payment to the employer of plan benefits* which otherwise would be due the participant under the plan, and
> (ii) Any direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires *from a participant or beneficiary* a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary.

26 C.F.R. § 1.401(a)-13(c)(1) (emphasis added).

On its face, Section 206 of ERISA only restricts alienation of "benefits provided under the plan." 29 U.S.C. § 1056(d)(1). When read in conjunction with the coordinate IRC regulations, it is clear that recapturing a fraudulent transfer does not constitute an "assignment" or "alienation" prohibited by ERISA. Subpart (i) requires that the payment be made to an *employer*. Plaintiff is not an employer, and subpart (i) is therefore inapplicable. Subpart (ii) requires that an enforceable right be obtained from a *participant or beneficiary*, not from the plan itself. Dr. Galbreth is sued in his capacity as the trustee of the Galbreth Benefit Plans. See (**Doc. No. 1**), Complaint, caption.  There is no evidence that Dr. Galbreth acted in his capacity as a beneficiary or participant; on the contrary, when addressing Dr. Galbreth's relevant conduct Plaintiff specifically refers to Dr. Galbreth's actions as the trustee of the Galbreth Benefit Plans. See id., at ¶¶4-8.  Thus, subpart (ii) is also inapplicable.

Several courts have examined 29 U.S.C. § 1056(d)(1) and the accompanying IRC regulations to determine whether a particular transaction constituted an assignment or alienation within the meaning of ERISA.  Consider In re Schantz, 221 B.R. 653 (N.D.N.Y. 1998), for

example, where the court determined that the anti-alienation provision did not prohibit a trustee from pledging plan assets.  The court reasoned that the provision is "restricted to the alienation of the legal right of the beneficiary to receive benefits, a right which is independent of the trustee's ownership of those benefits. The pledging of a trust asset would not alter a beneficiary's legal right to receive benefits…."  Id.  Similarly, the court in O'Toole v. Arlington Trust Co., 681 F.2d 94 (1st Cir.1982) found that a bank, which had used the deposited assets of a trust to offset the trustees' outstanding loans, was not subject to ERISA's anti-alienation provision. The court noted that:

> The prohibition [on alienation] is directed at 'benefits provided,' not the corpus of the fund; and the potential for assignment or alienation, which is limited by the prohibition, would seem to lie with the beneficiary, not the depository. … We would be hard-pressed to find that § 1056(d) was intended to do more than address the individual beneficiary's right of access to his share of the fund.

Id. at 96. (citations omitted).

Because the anti-alienation provision only prohibits alienation of benefits that become payable to a plan participant or beneficiary, those provisions do not limit the Trustee's right to recover fraudulent transfers from the corpus of the Galbreth Benefit Plans.

Further, even if this Court were to find that the fraudulent transfers in this matter were alienations or assignments within the scope of ERISA, the anti-alienation provision, even if otherwise applicable, does not supersede the avoidance provisions of the Bankruptcy Code. ERISA must be read in harmony with 11 U.S.C. §§ 544 and 548.  See U.S. v. Wampler, 624 F.3d 1330, 1336 (10th Cir. 2010) (citing the "familiar principle of statutory construction that, when possible, courts should construe statutes … to foster harmony with other statutory and constitutional law") (internal citations omitted).  ERISA itself explicitly states "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of

the United States." 29 U.S.C. § 1144(d). Thus, ERISA can be read to prohibit the alienation of plan benefits *except* as otherwise provided for by federal law.

Although only a handful of courts have examined this issue, the majority permitted bankruptcy trustees to use the avoiding powers of 11 U.S.C. §§ 547 and 548 to recover from ERISA plans. For example, the court in In re Goldschein, 241 B.R. 370, 379 (Bankr.D.Md. 1999) held that while "the anti-alienation provision[] protects a beneficiary's interest in legitimate Plan assets from collection . . . by creditors," it does "not preclude the avoidance of fraudulent transfers." In handing down a similar ruling, the court in In re CF & I Fabricators of Utah Inc., 163 B.R. 858, 878 (Bankr.D.Utah 1994) noted that "[t]o rule otherwise would provide a windfall to the . . . Benefit Plan at the expense of [the debtor's] creditors." See also Velis v. Kardanis, 949 F.2d 78, 82 (3rd Cir.1991) (noting that "Congress intended to provide protection against the claims of creditors for a person's interest in pension plans, *unless* vulnerable to challenge as fraudulent conveyances or voidable preferences.") (emphasis added); In re Key Communications, Inc., 994 WL 242643, *1 (5th Cir. 1994) (noting that the appellant cited "no authority for the proposition that pension plans can serve as safe harbors for fraudulent conveyances or voidable transfers"). In fact, other courts in this district have reached the same conclusion in cases involving VRC specifically. See In re Vaughan Co., Realtors, 493 B.R. 597 (Bankr. D.N.M. 2013).

This Court finds U.S. Bankruptcy Judge Robert Jacobvitz's analysis in In re Vaughan Co., Realtors especially persuasive:

> The Court concludes that the application of the Bankruptcy Code's provisions voiding fraudulent transfers does not conflict with the identified purposes of ERISA's anti-alienation provision. The Bankruptcy Code is directed at the prevention of debtor fraud, while ERISA is aimed at protecting employees "from … [their] own financial improvidence in dealing with third parties." American Telephone & Telegraph Co. v. Merry, 592 F.2d 118, 124 (2d Cir.1979). To hold

otherwise would subordinate the Bankruptcy Code to ERISA, which contravenes ERISA's express directive that it not be construed to supersede any other federal law. *See* 29 U.S.C. § 1144(d).

Id., at 607.

Accordingly, the Court finds that ERISA does not prevent Plaintiff's recovery of fraudulent transfers made to the Galbreth Benefit Plans.

### III. The Complaint Sufficiently Alleges Claims Against the Galbreth 401(k) Plan

Defendants request the dismissal of the claims against the Galbreth 401(k) Plan because Defendants allege that Plaintiff has not pled the claims against the 401(k) Plan with the specificity required by Fed. R. Civ. P. 12(b)(6). In her Response, Plaintiff does not specifically address Defendants' argument regarding the 401(k) Plan, but instead argues generally that she pled sufficient facts to survive a motion to dismiss. In Plaintiff's Complaint, the only reference specifically to the 401(k) Plan itself (not to Dr. Galbreth as the trustee of the 401(k) plan) is, "[u]pon information and belief, the Galbreth Benefit Plan may have been converted, or its asserts may have been transferred to the ][ 401(k) Plan. To the extent the Galbreth Benefit Plan transferred any of its assets to the Galbreth 401(k) Plan, the Galbreth 401(k) Plan is a subsequent or mediate transferee of any transfers from VCR" See Complaint, ¶ 4.

To survive a motion to dismiss, a complaint must merely contain sufficient facts that, if assumed to be true, state a claim to relief that is facially plausible. See Twombly, 550 U.S. at 570. The Tenth Circuit has clearly stated that "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir 2012). Here, Plaintiff has made a factual allegation that the Galbreth Benefit Plan was converted into the 401(k) Plan or at the very least that some funds were transferred between the two. This factual allegation is

9

sufficient to provide Defendants with notice regarding the basis of Plaintiff's claims against the 401(k) Plan. The rest of the Complaint addresses in detail the underlying factual basis for Plaintiff's claim generally. If Plaintiff's allegation regarding the conversion of the Benefit Plan into the 401(k) Plan is not borne out by discovery, Defendants will have an opportunity to reargue this point in a motion for summary judgment. Accordingly, at this stage of the case, Plaintiff has alleged enough facts to survive Defendants' Motion to Dismiss.

## IV. The Complaint Sufficiently Alleges That the Transfers Were Not Made for Reasonably Equivalent Value

Defendants move to dismiss Plaintiff's constructive fraud claims (Counts IV, V, VIII, IX, X, XI, and XII) because Plaintiff's Complaint allegedly does not provide specific factual assertions showing that VCR did not receive a reasonably equivalent value for the transfers. Defendants further argue that a showing of a Ponzi scheme, in and of itself, does not support a finding that the transfers were not for reasonably equivalent value. Plaintiff's response does not specifically address whether the Complaint sufficiently pled that the transfers were not for reasonably equivalent value. Instead Plaintiff simply attempts to discredit Defendants' argument that the transfers were for reasonably equivalent value. This Court agrees with Defendant that Plaintiff's factual allegations with regard to each specific constructive fraud claim are "formulaic recitations of the element[s] of the claim." However, each Count of Plaintiff's Complaint incorporates by reference the allegations contained in the previous paragraphs of the Complaint. Therefore, this Court will consider the Complaint as a whole rather than only the factual allegations referred to in the constructive fraud counts.

Constructive fraud under 11 U.S.C. § 548(a)(1)(B) requires the plaintiff to establish that the debtor "received less than a reasonably equivalent value in exchange for the transfer." 11 U.S.C. § 548(a)(1)(B)(i). Similarly, the constructive fraud provisions under the New Mexico

Fraudulent Transfer Act contain a requirement that the debtor made the transfer "without receiving a reasonably equivalent value in exchange for the transfer." N.M.S.A. 1978 § 56-10-18(A)(2). The plaintiff bears the burden of demonstrating that the transferor received less than a reasonably equivalent value in exchange for the transfer. See Parks v. Persels and Associates, LLC (In re Kinderknecht), 470 B.R. 149, 169 (Bankr.D.Kan. 2012) (stating that the Chapter 7 trustee, as the party seeking to set aside a transfer as constructively fraudulent, bears the burden of proving that the debtor received less than a reasonably equivalent value).

In this instance, Defendants invested money with VCR. The transfers at issue here are those transfers that VCR made back to Defendants. Because of the fact that Defendants had already given VCR money, the "value" that VCR received from its transfers to Defendants was a reduction in the potential restitution claim Defendants had based upon their original investment. This is similar to the analysis conducted in In re Indep. Clearing House Co., 77 B.R. 843, 857 (D. Utah 1987):

> [f]rom the time a defendant entrusted his money to the debtors, he had a claim against the debtors for the return of his money. We believe that the Code's definition of "debt" and its related terms is broad enough to cover the debtors' obligation to return a defendant's principal undertaking, whether that obligation was based on the contract between the debtors and the defendant or was based on the defendant's right to restitution.

Independent Clearing House, 77 B.R. at 857.

The court reasoned further that "to the extent a transfer merely repaid a defendant's undertaking, the debtor received not only a 'reasonably equivalent value' but the exact same value – dollar for dollar." Id.

The Tenth Circuit took a similar approach to analyzing reasonably equivalent value in the context of a Ponzi scheme in Jobin v. McKay (In re M & L Business Machine Co.), 84 F.3d

11

1330 (10th Cir. 1996). In McKay, the Tenth Circuit began its analysis by examining the definitions set forth in the Bankruptcy Code. 84 F.3d at 1340. "Value" is defined under 11 U.S.C. § 548(d)(2)(A) as "property, or satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A). "Debt" is defined as "liability on a claim," and "claim" is broadly defined as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured," and includes the "right to an equitable remedy for breach of performance." 11 U.S.C. § 101(5) and (12). Reasonably equivalent value can take the form of a reduction in the amount of a claim by the transferee against the transferor resulting from the transferee's receipt of the payment. McKay, 83 F.3d at 1341. A defrauded investor's contractual right to the return of its principal or restitution claim could, thus, qualify as an antecedent debt under these definitional Code sections. See id. Whether the transferee had a claim for restitution and whether the payment reduced the amount of the claim is governed by applicable state law. Id.

New Mexico courts recognize that restitution is an equitable remedy, and often look to the Restatements for guidance in considering restitution claims. See e.g., Eker Bros., Inc. v. Rehders, 2011-NMCA-091 ¶8, ¶18, 150 N.M. 542, 263 P.3d 319, 321-323 (acknowledging that "[t]raditionally, restitution is thought of as an equitable remedy" and applying the Restatement (Second) of Contracts § 374 regarding restitution in favor of party in breach to award the value of benefits conferred in excess of the loss caused by that party's own breach of the contract.). Consistent with the Restatement (Third) of Restitution, an investor in a Ponzi scheme who had no actual knowledge and did not participate in the fraud is entitled to retain distributions up to the amount of their initial investment. See Restatement (Third) Restitution § 37(2) and (3).

Under the Restatement, a party is entitled to restitution to recover benefits conferred when a contractual obligation to the party is unenforceable as against public policy. Id. This is true provided that restitution would not defeat or frustrate the policy rendering the contract unenforceable, and the party asserting a claim for restitution has not acted inequitably. Id. Retention of withdrawals or distributions up to the amount of the investment would not defeat or frustrate the public policy rendering a promissory note issued in furtherance of a Ponzi scheme void as against public policy. See McKay, 84 F.3d at 1341-42 (discussing reasonably equivalent value in terms of defendant's restitution claim); Perkins v. Haines, 661 F.3d 623, 627 (11th Cir. 2011) (stating that the general rule for Ponzi schemes "is that a defrauded investor gives 'value' to the Debtor in exchange for a return of the principal amount of the investment, but not as to any payments in excess of principal.") (citation omitted).

However, because a claim for restitution is equitable in nature, "investors who have knowledge of, and help perpetuate, a fraud should not be permitted to benefit in the form of restitution." Picard v. Merkin (In re Bernard L. Madoff Inv. Securities, LLC), 440 B.R. 243, 262 (Bankr.S.D.N.Y. 2010) (applying New York law); see also In re United Energy Corp., 944 F.2d 589, 596, n.7 (9th Cir. 1991)

> [In] recognizing these claims for rescission and restitution, we assume that the investors had no knowledge of the fraud the debtors were perpetrating. If investments were made with culpable knowledge, all subsequent payments made to such investors . . . would be avoidable under section 548(a)(2), regardless of the amount invested, because the debtors would not have exchanged a reasonably equivalent value for the payments.

Id. (citation omitted).

Similarly, in evaluating "reasonably equivalent value" under 11 U.S.C. § 548(a)(2) in light of a defendant's potential claim for restitution, the Tenth Circuit, applying Colorado law, determined that a transferee without actual knowledge of the Ponzi scheme had a restitution

claim at the time of transfer even if the transferee was negligent and unreasonable in relying upon the misrepresentation. McKay, 84 F3d at 1341-42.  Thus, the defendant without actual knowledge of the Ponzi scheme provided reasonably equivalent value through a reduction in the amount of his claim for restitution sufficient to defeat the claim to recover the transfer as constructively fraudulent under § 11 U.S.C. § 548(a)(2).  Id., at 1341- 1342.[5]

     Here, Plaintiff has alleged that Defendants knew or should have known that the VCR promissory note program was a fraudulent scheme and that the Defendants willingly turned a blind eye to several red flags that would indicate that VCR was perpetrating fraud.  Plaintiffs further allege that such red flags became commonly known by the public at large following the arrest of Bernard Madoff in 2008 and that Defendants nevertheless continued to invest in VCR's note program despite the fact that the interest rates the Defendants received were "unreasonably high."  These allegations are sufficient to state a plausible claim that Defendants had actual knowledge of the fraud and subjectively knew that they were participating in a fraudulent scheme. Defendants may, in fact, have a claim for restitution that was partially satisfied when they received distributions. But if the Defendants had subjective knowledge that they were participating in the fraudulent scheme, they would be precluded from asserting a claim for restitution. Because the Court cannot determine Defendants' subjective knowledge at this stage in the proceeding, it is premature for the Court to dismiss the Plaintiff's claims for constructive fraud. The Court cannot find that Plaintiff failed to sufficiently plead that the transfers made in this case were for less than reasonably equivalent value.  The Court will, therefore, deny the Defendants' request to dismiss Plaintiff's constructive fraud claims.

---

[5] The actual knowledge standard for constructive fraud claims differs from the objective standard by which the good faith defense to actual fraud claims is measured.  See McKay, 84 F.3d at 1338 (concluding "that good faith under § 548(c) should be measured objectively and that 'if the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose and a diligent inquiry would have discovered the fraudulent purpose, then the transfer is fraudulent.'") (citations omitted).

### V.   The Complaint meets the Fed. R. Civ. P. 9(b)(6) Standard for Fraud

Pursuant to Rule 9(b), Fed.R.Civ.P., a party alleging fraud "must state with particularity the circumstances constituting fraud[,]" though "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." A party asserting a claim for actual fraud under either 11 U.S.C. § 548(a)(1) or applicable state law is subject to the heightened pleading requirements of Rule 9(b). See In re Tronox Inc., 429 B.R. 73, 92 (Bankr. S.D.N.Y. 2010) (stating that the requirements for properly asserting an intentional fraudulent transfer claim fulfill Rule 9(b)'s purpose of providing detailed notice of the alleged fraud claims to defendants). Plaintiff asserts claims based on actual fraud under the Bankruptcy Code and under state law. The actual fraud provision found in 11 U.S.C. § 548(a)(1) provides, in relevant part:

> The trustee may avoid any transfer . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (a) made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . indebted.

11 U.S.C. § 548(a)(1).

Similarly, N.M.S.A. 1978 § 56-10-18(A)(1) includes the requirement that the debtor made the transfer "with actual intent to hinder, delay or defraud any creditor of the debtor." Defendants assert that Plaintiff's Complaint falls short of Rule 9(b)'s specificity requirement because Plaintiff has failed to plead any facts alleging that Galbreth Defendants were aware of the Ponzi scheme.

To satisfy the heightened pleading requirement under Fed.R.Civ.P. 9, a plaintiff must sufficiently plead the factual grounds upon which the fraud is based in order to afford the defendant fair notice of the fraud claim, including: the time, place, and contents of the alleged fraudulent representation, the identity of the party who made the misrepresentation, and the

15

consequences of the false representation. Koch v. Koch Indus., Inc., 203 F.3d 1202, 1236 (10th Cir. 2000) (citation omitted). Fraudulent intent for purposes of establishing a claim for actual fraud is determined based on the intent of the transferor, in this instance, VCR, rather than the transferee. See In re Actrade Fin. Technologies Ltd., 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (stating that "[c]ases under § 548(a)(1)(A) indicate that it is the intent of the transferor and not the transferee that is relevant for purposes of pleading a claim for intentional fraudulent conveyance under the Bankruptcy Code.") (citations omitted). In addition, when a fraudulent transfer claim is asserted by the bankruptcy trustee, courts often apply a less stringent standard when weighing the sufficiency of the complaint, reasoning that "'a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge.'" See Nisselson v. Softbank AM Corp., (In re MarketXT Holdings Corp.), 361 B.R. 369, 395 (Bankr.S.D.N.Y. 2007) (citations omitted). Nevertheless, many courts require that, even under the less stringent standard applicable to a trustee, to satisfy the particularity requirement of Rule 9 when pleading an actual fraudulent transfer, the plaintiff must set forth facts sufficient to apprise the defendant "of the nature of his alleged participation in the fraud," (See Pereira v. Grecogas Ltd. (In re Saba Enterprises, Inc.), 421 B.R. 626, 640-641 (Bankr.S.D.N.Y. 2009) (describing different approaches taken by courts in applying a relaxed standard for plaintiffs with second-hand knowledge of the alleged fraud)) and at least connect the defendant's actions to the debtor's alleged scheme to defraud. See In re Crescent Oil Co., Inc., 09-20258, 2011 WL 3878377, *2 (Bankr. D. Kan. Aug. 31, 2011)

  When there is sufficient evidence of a Ponzi scheme, the "actual intent to defraud" element necessary to recover a transfer as actually fraudulent under either § 548(a)(1)(A) or applicable state law can be established based on a "Ponzi scheme presumption." See e.g., Perkins

v. Haines, 661 F.3d 623, 626 (11th Cir. 2011) ("With respect to Ponzi schemes, transfers made in furtherance of the scheme are presumed to have been made with the intent to defraud for purposes of recovering the payments under §§ 548(a) and 544(b).") (citations omitted); In re AFI Holding, Inc., 525 F.3d 700, 704 (9th Cir.2008) ("'the mere existence of a Ponzi scheme' is sufficient to establish actual intent under 548(a)(1) or a state's equivalent to that section."). Under this rule, it is presumed that "'any transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay, or defraud creditors.'" McHale v. Boulder Capital LLC (In re The 1031 Tax Group, LLC), 439 B.R. 47, 72 (Bankr.S.D.N.Y. 2010) (citations omitted).

The allegations in the Complaint describing the promissory note program and VCR's method of conducting business and securing new investors plausibly describe a Ponzi scheme.

> A "Ponzi" scheme, as that term is generally used, refers to an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments. Typically, investors are promised large returns for their investments. Initial investors are actually paid the promised returns, which attract additional investors.

In re Vaughan Co., Realtors, 481 B.R. 752, 760 (Bankr. D.N.M. 2012)

In a typical Ponzi scheme, (1) the debtor receives funds from investors (which can include parties loaning money to generate a return); (2) investors are promised large returns for their investments; (3) initial investors are actually paid the promised returns, which attracts additional investors; (4) returns to investors are not financed through the success of the underlying business venture, if any, but are taken from principal sums received from newly attracted investments; and (5) the debtor induces investments through an illusion of paying returns to investors from legitimate business activities. Id. (citations omitted).

The Complaint generally describes the alleged Ponzi scheme perpetrated by Doug Vaughan through VCR and other entities in which Mr. Vaughan held an interest. For example, Plaintiff alleges that VCR issued promissory notes to investors with high, fixed rates of return that were allegedly secured by a deed of trust on real property, other investments, and Mr. Vaughan's personal wealth.  Plaintiff argues that, in fact, the money received from investors "was not utilized to buy real estate or to further real estate projects as purported, but instead was primarily used to make principal and/or interest payments to other investors and to fund VCR's operating expenses . . . and to enrich [Mr.] Vaughan." See Complaint, at ¶ 23.  Finally, the Complaint recites that in Mr. Vaughan's individual bankruptcy case, the bankruptcy court found that the only way Mr. Vaughan was able to continue his business operations was to obtain additional "'funds from investors who were promised high rates of return on their investments. The funds invested were not utilized as represented; rather they went to pay the high rates of returns to the prior investors. This is a textbook example of a Ponzi scheme.'"

These allegations are sufficient to set forth a plausible claim that VCR operated its business as a Ponzi scheme. Thus, the Complaint contains factual allegations sufficient to allege "actual intent to defraud" under the Ponzi scheme presumption.  The allegations in the complaint also sufficiently connect the Defendants to the alleged Ponzi scheme. The Complaint identifies each of the alleged investments the Defendants made, and the alleged rate of return for each investment. As for the transfers Plaintiff seeks to recover, the Complaint identifies the total amounts that Plaintiff alleges were transferred to Defendants during each look-back period.  The allegations in the Complaint sufficiently connect Defendants to the Ponzi scheme by specifically identifying the investments they made which were a part of the "promissory note program" and the payments made to Defendants. The Court, therefore, concludes that the Complaint satisfies

Rule 9, Fed.R.Civ.P. because the allegations sufficiently provided defendants with "'fair notice of plaintiff's claims and the factual background upon which [they] are based . . .'" Koch v. Koch Indus., 203 F.3d at 1236.

**THEREFORE, IT IS ORDERED** that Defendants' Motion to Dismiss **(Doc. No. 5)** is **GRANTED** in part and **DENIED** in part.  Count 1 of Plaintiff's Complaint is dismissed; however, Defendants' Motion is denied in regards to the other Counts.

_____
UNITED STATES DISTRICT JUDGE