# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JUDITH A. WAGNER, Chapter 11 Trustee
of the Bankruptcy Estate of the Vaughan
Company, Realtors,

   Plaintiff,

v.             No.  CV-12-817 WJ/SMV
               (Master Case No.)

JULIE FELD and ANDY FELD     No.  CV-12-220 WJ/SMV

   Defendants.


**AMENDED MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY
JUDGMENT <u>ON HER FRAUDULENT TRANSFER CLAIMS AGAINST FELD
DEFENDANTS</u>**

   **THIS MATTER** comes before the Court upon Plaintiff's Amended Motion for Partial

Summary Judgment against Defendants Andy and Julie Feld on the Trustee's Fraudulent

Transfer Claims, filed September 27, 2013 (**Doc. No. 501**).  Having considered the parties' briefs

and the applicable law, the Court finds that Plaintiff's Motion is partially well-taken and,

therefore, is GRANTED in part and DENIED in part[1].

### Background

   This case arises out of a massive Ponzi scheme perpetrated by Doug Vaughan through

Vaughan Company Realtors ("VCR").  This adversary proceeding is one of many adversary

proceedings initiated by the Chapter 11 Trustee seeking to recover payments made by VCR to

---

[1]  The Amended Order is entered pursuant to the Court's ruling on Defendants' Motion for Relief from Order (Doc. No 692.  The Amended Order is intended to replace the previous Order (**Doc. No 627**) in its entirety.  However, the Amended Order does not alter the substance of the previous Order, it only clarifies the rulings of the previous Order.

parties who invested in VCR's promissory note program.[2]  In the present Motion, Plaintiff seeks summary judgment on her constructive and actual fraudulent transfer claims as set forth in Counts 2, 3, 4, 5, 6, and 7 of her Complaint.

## Undisputed Material Facts[3]

Douglas Vaughan operated the VCR promissory note program[4] from 1972 through the date VCR filed for bankruptcy, February 22, 2010 (*hereinafter* referred to as the "Petition Date").  The promissory note program involved VCR through Mr. Vaughan accepting money from investors in exchange for interest bearing promissory notes.  The rates of interest on the promissory notes ranged between 8% to 40% per year.  Mr. Vaughan used the money from investors to: 1) pay interest owed to previous investors; 2) pay himself; and 3) subsidize the operation of VCR.  Mr. Vaughan did not disclose to his investors how the money was actually being used and instead, informed investors that the money was used for legitimate business operations.  From as early as 2005, Mr. Vaughan used the money from later investors to pay the interest owed to previous investors, because VCR was not earning enough money from its business operations to pay the earlier investors.  All of the money involved in these transactions was deposited to and withdrawn from VCR's operating account, including the money involved in the transfers to and from Defendants.  From 2000 forward, VCR was insolvent and was operating at a loss of millions of dollars per year.

---

[2] The background facts underlying this matter have been extensively discussed by this Court in numerous opinions entered in the Master Case No. 12CV817.

[3]  The facts set forth below are supported by the evidence in the record and are undisputed.  Defendants' disputes of Plaintiff's material facts have been resolved either by agreement of the parties or by the Court's determination that either the fact was not material or was not in genuine dispute.  Further, Defendants attempted to provide additional facts.  The Court finds that the additional facts proffered by Defendants were either unsupported by evidence or not material to the Court's decision regarding Plaintiff's Motion.  Accordingly, the Court did not consider them when reaching its decision.

[4]  Mr. Vaughan was indicted and convicted on criminal charges arising out of his activities as the director of the promissory note program.  The undisputed material facts are taken, in part, from Mr. Vaughan's allocution to certain acts pursuant to his Plea Agreement.  Mr. Vaughan is currently in federal prison.

Julie Feld transferred $100,000 to VCR's promissory note program.  From 2003 through the Petition Date, Ms. Feld received $160,317.62 in transfers from VCR.  Ms. Feld did not receive this money in one lump sum, however, she received monthly checks.  Ms. Feld received a total of $60,317.62 more than her original investment ("Julie Feld Net Winnings").  Andy Feld transferred $10,000 to VCR's promissory note program.  Between 2003 and the Petition Date, Mr. Feld received a total of $18,013.19 from VCR.  Mr. Feld did not receive this money in one lump sum, however, he received monthly checks.  Accordingly, Mr. Feld received a total of $8,031.19 more than his original investment ("Andy Feld Net Winnings").

## Discussion

### I.      Legal Standard for Motions for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; he may not rest on mere allegations or denials in his own pleadings.  Anderson v. Liberty Lobby, 477 U.S. 242, 256-57 (1986).  In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor.  Id. at 249.  A mere scintilla of evidence in the nonmovant's favor is not sufficient.  Id. at 252.

### II.     Plaintiff has Established as a Matter of Law that the Transfers were Made with the Actual Intent to Defraud

The actual fraud provision found in 11 U.S.C. § 548(a)(1) provides, in relevant part:

> The trustee may avoid any transfer ... that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily-
> (A) made such transfer ... with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made ... indebted.

11 U.S.C. § 548(a)(1).

Similarly, N.M.S.A.1978 § 56-10-18(A)(1) includes the requirement that the debtor made the transfer "with actual intent to hinder, delay or defraud any creditor of the debtor."

As a preliminary matter, it is undisputed that VCR's promissory note program was a Ponzi scheme operated by Mr. Vaughan[5].

> A "Ponzi" scheme, as that term is generally used, refers to an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments. Typically, investors are promised large returns for their investments. Initial investors are actually paid the promised returns, which attract additional investors.

In re Vaughan Co., Realtors, 481 B.R. 752, 760 (Bankr. D.N.M. 2012)

In a typical Ponzi scheme, (1) the debtor receives funds from investors (which can include parties loaning money to generate a return); (2) investors are promised large returns for their investments; (3) initial investors are actually paid the promised returns, which attracts additional investors; (4) returns to investors are not financed through the success of the underlying business venture, if any, but are taken from principal sums received from newly attracted investments; and (5) the debtor induces investments through an illusion of paying returns to investors from legitimate business activities.  Id. (citations omitted).

---

[5]    Defendants do not dispute Plaintiff's Material Fact # 38 which states that "VCR was operating with characteristics of a Ponzi scheme."  See **(Doc. No. 449)**, Plaintiff's Brief in Support of her Motion for Summary Judgment, p. 10).  This admission alone may be enough to conclusively establish that the promissory note program was a Ponzi scheme, but out of abundance of caution the Court will analyze whether the VCR program meets the traditional characteristics of a Ponzi scheme.

Defendants do not dispute that Mr. Vaughan took money from investors purportedly for VCR's promissory note program and that Mr. Vaughan promised high rates of return, between 8% and 40% per year. It is undisputed that for the relevant time periods, VCR was insolvent and thus needed money from additional investors to pay the interests owed to the earlier investors. Defendants admit that payments from later investors were used to pay earlier investors. Further, it is undisputed that Mr. Vaughan did not reveal the true nature of the investments or the sources of the interest payments to the investors. The VCR promissory note program is a classic example of a Ponzi scheme. The United States Bankruptcy Court for the District of New Mexico has likewise concluded that the VCR program was a Ponzi scheme. See In re Vaughan Co. Realtors, MISC. 12-0006, 2013 WL 5744727, *15 (Bankr. D.N.M. Oct. 23, 2013) (considering claims involved the VCR promissory note program and stating "[t]his case presents a textbook example of a Ponzi scheme."). Accordingly, the Court holds that the VCR program was a Ponzi scheme.

"When there is sufficient evidence of a Ponzi scheme, the 'actual intent to defraud' element necessary to recover a transfer as actually fraudulent under either § 548(a)(1)(A) or applicable state law can be established based on a 'Ponzi scheme presumption.'" Wagner v. Galbreth, CV-12-817 WJ/SMV, 2013 WL 5670866 at *10 (D.N.M. Sept. 30, 2013) (citing Perkins v. Haines, 661 F.3d 623, 626 (11th Cir. 2011) ("With respect to Ponzi schemes, transfers made in furtherance of the scheme are presumed to have been made with the intent to defraud for purposes of recovering the payments under §§ 548(a) and 544(b).") (citations omitted); In re AFI Holding, Inc., 525 F.3d 700, 704 (9th Cir.2008) ("'the mere existence of a Ponzi scheme' is sufficient to establish actual intent under 548(a)(1) or a state's equivalent to that section.")). "Under this rule, it is presumed that 'any transfers made in the course of a Ponzi scheme could

have been made for no purpose other than to hinder, delay, or defraud creditors.'" <u>Id.</u> (citing <u>McHale v. Boulder Capital LLC (In re The 1031 Tax Group, LLC)</u>, 439 B.R. 47, 72 (Bankr.S.D.N.Y. 2010) (citations omitted)).

The Court's determination that the VCR promissory note program was a Ponzi scheme is not dispositive.  In addition to proving the existence of a Ponzi scheme, the movant must sufficiently connect the relevant transfers to the Ponzi scheme. See <u>Perkins</u>, 661 F.3d at 626 (noting that transfers must be made "in furtherance of the [Ponzi] scheme" to prove actual intent to defraud); <u>In re 1031 Tax Group, LLC</u>, 439 B.R. 37, 72 (Bankr. S.D.N.Y. 2010) ("For the Ponzi scheme presumption to apply, the transfers must have been made in connection with a Ponzi scheme."). If a plaintiff demonstrates that payments to particular investors were made in furtherance of the Ponzi scheme, he or she need not demonstrate a traceable relationship between a particular investment and money paid out to other investors.  See <u>Carroll v. Stettler</u>, 2010 WL 4611450, *2 (E.D.Pa. 2010) (declining to require such a traceable relationship and collecting cases).

Here, Plaintiff has clearly demonstrated that the transfers made to Defendants by VCR were a part of the Ponzi scheme.  All of the transfers made by and to Defendants were from the VCR operating account, the same account that held all of the other investor's money.  Further, Defendants admit that the transfers they made to VCR were for the purposes of the promissory note program and that they expected to accrue interest on the promissory notes.  The transfers made back to Defendants by VCR were "interest" on Defendants' investments.  Accordingly, Plaintiff has conclusively demonstrated that the transfers made by and to Defendants were part of the Ponzi scheme.  Because the VCR promissory note program was a Ponzi scheme and the transfers at issue here were made in furtherance of the Ponzi scheme, the Court finds that

Plaintiff has established as a matter of law that VCR made the transfers with actual intent to defraud its creditors.

### III.    Plaintiff has Established that the Transfers were not Made for Reasonably Equivalent Value

Plaintiff also brings claims for constructively fraudulent transfers under 11 U.S.C. § 548(a)(1)(B) and NMSA § 56-10-18.   Constructive fraud under 11 U.S.C. § 548(a)(1)(B) requires the plaintiff to establish that the debtor "received less than a reasonably equivalent value in exchange for the transfer." 11 U.S.C. § 548(a)(1)(B)(i).  Similarly, the constructive fraud provisions under the New Mexico Fraudulent Transfer Act contain a requirement that the debtor made the transfer "without receiving a reasonably equivalent value in exchange for the transfer." N.M.S.A. 1978 § 56-10-18(A)(2).   The plaintiff bears the burden of demonstrating that the transferor received less than a reasonably equivalent value in exchange for the transfer.  See Parks v. Persels and Associates, LLC (In re Kinderknecht), 470 B.R. 149, 169 (Bankr.D.Kan. 2012) (stating that the Chapter 7 trustee, as the party seeking to set aside a transfer as constructively fraudulent, bears the burden of proving that the debtor received less than a reasonably equivalent value).

Defendants also assert three affirmative defenses based upon their good faith during their interaction with VCR that overlap with Plaintiff's burden.  Under NMSA 56-10-22(A), "A transfer or obligation is not voidable under Paragraph (1) of Subsection A of Section 5 [56-10-18 NMSA 1978] of the Uniform Fraudulent Transfer Act against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or oblige."  The Bankruptcy Code provides not one, but two, articulations of a defense to a voidable transfer: "a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case

may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation" 11 U.S.C. 548 (c).  11 U.S.C. 550 (b)(1) also protects a "transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided."   Unlike the state law good faith defense, the federal defenses do not require that the value be reasonably equivalent, simply that some value was given.

Because both Plaintiff's burden and Defendants' affirmative defenses involve a determination of whether value was given to VCR for the transfers made to Defendants, the Court will analyze these issues together.   The Court must first note the proper standard to be applied to Defendants' affirmative defenses.   Defendants assert that Plaintiff is not entitled to summary judgment unless she can disprove Defendant's good faith defense.   Defendants also assert that to the extent that they continue to carry a burden to prove good faith, they can satisfy that burden by pointing to Plaintiff's lack of evidence show bad faith by Defendants.   Defendants do not provide any legal authority in support of these assertions.   Defendants are incorrect regarding Plaintiff's burden as to Defendants' affirmative defenses.   As a general rule, "[u]nder § 548(c), [Defendant] has the burden of establishing good faith."   In re M & L Bus. Mach. Co., Inc., 84 F.3d 1330, 1338 (10th Cir. 1996).  This burden is not shifted to Plaintiff simply because she is moving for summary judgment; Defendants must first still prove their affirmative defenses.   See Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc., 912 F.2d 1238, 1241 (10th Cir.1990) ("Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial 'as to those dispositive matters for which it carries the burden of proof.'");   Harper v. Delaware Valley Broadcasters, Inc., 743 F.Supp. 1076, 1090–91 (D.Del.1990) aff'd, 932 F.2d 959 (3d Cir.1991) (table) (holding

8

the burden is on defendant to adduce evidence supporting affirmative defense, not upon movant to negate its existence); McCollough v. Johnson, Rodenberg & Lauinger, 587 F.Supp.2d 1170, 1176 (D.Mont.2008) (stating that a plaintiff moving for summary judgment is not obligated to negate affirmative defenses); Yturria v. Kerr-McGee Oil & Gas Onshore, LP, 7:05-CV-181, 2006 WL 3227326 (S.D. Tex. Nov. 6, 2006) aff'd sub nom Yturria v. Kerr-McGee Oil & Gas Onshore, LLC, 291 F. App'x 626 (5th Cir. 2008)("Should Defendants prove all of the elements of their affirmative defenses as a matter of law, Plaintiffs can meet their summary judgment obligation by pointing the Court to the absence of evidence to support Defendants' affirmative defenses."); In re Borges, 11-10-12800 S11, 2011 WL 4101096 (Bankr. D.N.M. Sept. 6, 2011) ("Thus, it is up to Defendants to demonstrate using evidence that their affirmative defenses create a genuine factual issue for trial, or, if the facts are uncontroverted, demonstrate that its defenses are legally sufficient.").   In spite of the fact that Defendants bear the burden of establishing the elements of their good faith defenses, the Court will determine whether Plaintiff has established a lack of reasonably equivalent value, because it is an element of Plaintiff's claims.

Before continuing further, the Court notes that Plaintiff is only seeking to avoid the transfers that constitute Defendants' net winnings.  In other words, Plaintiff is only challenging the transfers that exceeded Defendants' original investments.  It is clear that for the amounts equal to Defendants' original investments, VCR received reasonably equivalent value from Defendants in exchange for the transfers.[6]  Therefore, the Court will only consider whether VCR

---

[6]   This is similar to the analysis conducted in In re Indep. Clearing House Co., 77 B.R. 843, 857 (D. Utah 1987):

> [f]rom the time a defendant entrusted his money to the debtors, he had a claim against the debtors for the return of his money. We believe that the Code's definition of "debt" and its related terms is broad enough to cover the debtors' obligation to return a defendant's principal undertaking,

received reasonably equivalent value for the transfers made to Defendants which exceeded Defendants' original investment.

"Value" is defined under 11 U.S.C. § 548(d)(2)(A) as "property, or satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A). "Debt" is defined as "liability on a claim," and "claim" is broadly defined as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured," and includes the "right to an equitable remedy for breach of performance." 11 U.S.C. § 101(5) and (12).   According to the legislative history from both Houses of Congress, the terms "are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." In re Hedged-Investments Associates, Inc., 84 F.3d 1286, 1289 (10th Cir. 1996) (citation omitted).  Thus, a debtor receives "value" for a transfer if the transfer satisfies a "claim" the transferee-creditor has against the debtor.

In the context of a Ponzi scheme, "reasonably equivalent value" can take two forms. As the Bankruptcy Court explained more fully in Wagner v. Pruett, the investor may elect to rescind the entire contract, in which case reasonably equivalent value takes the form of a reduction in the amount of a restitution claim by the transferee against the transferor.  477 B.R. 206, 223 (Bankr.D.N.M. 2012) (citing Jobin v. McKay (In re M & L Business Machine Co.), 84 F.3d 1330, 1341 (10th Cir.1996)). In such a case, the transferor (i.e. the Ponzi perpetrator) receives reasonably equivalent value as a matter of law for any payments it made up to the amount of the

whether that obligation was based on the contract between the debtors and the defendant or was based on the defendant's right to restitution.

Independent Clearing House, 77 B.R. at 857.
The court reasoned further that "to the extent a transfer merely repaid a defendant's undertaking, the debtor received not only a 'reasonably equivalent value' but the exact same value – dollar for dollar." Id.

transferee's (*i.e.* investor's) initial investment. Id

Alternatively, an investor may elect to "affirm the entire contract and recover the difference between actual value of the benefits received and the value of those benefits if they had been as represented."   In re Hedged-Investments Associates, Inc., 84 F.3d at 1289-1290 (citing Colorado law).[7] In such a case, the Ponzi perpetrator receives reasonably equivalent value for any returns paid pursuant to a valid, enforceable contract.   Id. (suggesting that a transferor receives reasonably equivalent value where the transferor and transferee have a valid, enforceable contract for the payment of returns); In re Independent Clearing House Co., 77 B.R. 843, 857 (D.Utah 1987) ("[W]hether the debtors were indebted to a defendant for amounts in excess of his undertaking depends on whether or not the defendant had a valid, enforceable right under his contract with the debtors to receive payments of so-called earnings."); see also In re Taubman, 160 B.R. 964, 985 (Bankr.S.D.Ohio 1993) ("whether the Debtor was indebted to a defendant for amounts in excess of the original amount invested or loaned depends on whether or not the defendant had a valid, enforceable right under the contract with the Debtor to receive payments in excess of the amount given to the Debtor.").

Accordingly, whether VCR received reasonably equivalent value in exchange for the transfer of Net Winnings depends on whether Defendants had a valid, enforceable contract with VCR for the payment of amounts beyond their initial investment. See Independent Clearing

---

[7] Although the Tenth Circuit relied on Colorado law in Hedged-Investment Associates, New Mexico courts have also acknowledged a promisee's right to either rescind or affirm their contract. See Chavarria v. Fleetwood Retail Corp. of New Mexico, 2005-NMCA-082, 137 N.M. 783, 791, 115 P.3d 799, 807 rev'd in part on other grounds sub nom Chavarria v. Fleetwood Retail Corp., 2006-NMSC-046, 140 N.M. 478, 143 P.3d 717 (citing Everett v. Gilliland, 1943-NMSC-030, 47 N.M. 269, 141 P.2d 326, 330 ("It was the privilege of the plaintiff, thinking himself to have been defrauded, to determine his course of action. He could either bring an action to rescind the contract or affirm and sue for damages.")

House Co., 77 B.R. at 857; Taubman, 160 B.R. at 985. The Trustee argues that any contract for the payment of Net Winnings stemming from a Ponzi scheme contravenes public policy and is therefore unenforceable.  The Tenth Circuit has examined this issue through the lens of Colorado law. In Hedged-Investments Associates, the Tenth Circuit determined that, "as a matter of public policy, the contract [to pay returns on a Ponzi investment] was unenforceable to the extent it purported to give [the investor] … a right to payments in excess of her undertaking." 84 F.3d at 1290 (internal quotations omitted). The Tenth Circuit observed:

> To allow an investor to enforce his contract to recover promised returns in excess if his investment would be to further the debtors' fraudulent scheme at the expense of other investors. Any recovery would not come from the debtors' own assets because they had no assets they could legitimately call their own. Rather, any award of damages would have to be paid out of money rightfully belonging to other victims of the Ponzi scheme.

Id. (quoting Independent Clearing House, 77 B.R. at 858)[8].

The Court went on to say, "[a]ny transfers over and above the amount of the principal—i.e., for fictitious profits—are not made for 'value' because they exceed the scope of the investors' fraud claim and may be subject to recovery by a plan trustee.  Id.  Other courts have agreed with the Tenth Circuit's holding that no value is exchanged in the context of a Ponzi scheme for payments made to investors above their original investment.  See Perkins v. Haines, 661 F.3d 623, 627 (11th Cir. 2011) (noting "[i]n the case of Ponzi schemes, the general rule is that a defrauded investor gives "value" to the Debtor in exchange for a return of the principal amount of the

---

[8] Defendants cite In re Carrozzella & Richardson, 286 B.R. 480, 487 (D. Conn. 2002) in which the Court noted "a sharp split of authority on the issue of whether the payment of interest by a Ponzi scheme operator can ever constitute reasonably equivalent value." In re Carrozzella & Richardson, 286 B.R. 480, 487 (D. Conn. 2002).  The In re Carrozzella court sided with cases focusing on "the discrete transaction between the debtor and the defendant, without regard to the nature of the debtor's overall enterprise." Id.  The Court specifically criticized the holding of Independent Clearing House.  Id.  While the Court in re Carrozzella had the option of choosing a side, this Court is bound by the Tenth's Circuit decision of Hedged-Investments Associates which explicitly adopted the reasoning of Independent Clearing House.  Accordingly, Defendants' arguments based upon In re Carrozzella are unavailing.

investment, but not as to any payments in excess of principal" and holding the good faith defense inapplicable regardless of whether transferees knew of the Ponzi scheme); In re Nat'l Liquidators, Inc., 232 B.R. 99, 102 (Bankr. S.D. Ohio 1999) (holding that good faith defense was unavailable because Defendants did not receive value for payments in excess of their initial investment in a Ponzi scheme); Picard v. Katz, S.D.N.Y.2011, 462 B.R. 447, motion to certify appeal denied 466 B.R. 208 (transfers made in excess of investors' initial payment could be recovered regardless of customer's good faith).

The Court is convinced that the result under New Mexico law would be the same. New Mexico courts routinely refuse to enforce certain portions of contracts where the offending portions contravene public policy and the contract is of a type where public policy does not render it entirely void. See e.g., Fiser v. Dell Computer Corporation, 144 N.M. 464, 188 P.3d 1215 (2008) (declining to enforce portions of a contract which were contrary to public policy); Figueroa v. THI of New Mexico at Casa Arena Blanca, LLC, 2013-NMCA-077, ¶ 18 306 F.3d 480, 488 (Ct.App. 2012) (examining whether "the unfair terms of [a] contract … warrant enforcement"); see also Holguin v. Fulco Oil Services, L.L.C., 149 N.M. 98, 101, 245 P.3d 42, 45 (Ct.App. 2010) (examining whether certain provisions in a contract were enforceable in light of public policy); Piña v. Gruy Petroleum Mgmt. Co., 139 N.M. 619, 136 P.3d 1029 (determining that choice-of-law provision of contract was void as against public policy).  As the Tenth Circuit aptly explained in Hedged-Investments Associates, Net Winners can only enforce their contractual rights at the expense of other innocent investors. The Court believes that if presented with this question, New Mexico courts would decline to enforce a provision allowing an investor to assert a claim for net winnings at the expense of "net losers."

13

Additionally, the Bankruptcy Court when faced with the exact issue found that contractual obligations for any net winnings were unenforceable as a matter of public policy. See In re Vaughan Co. Realtors 12-0006, 2013 WL 5744727, 23 (Bankr. D.N.M. Oct. 23, 2013) (holding that net winners did not have valid recession claims to the extent of their Net Winnings and VCR did not have a valid enforceable contract obligation to pay any returns in excess of Defendants' initial investment).  The result is not affected by the fact that there were multiple transfers, because in total, Defendants received more than their original investment.  Defendants' argument that each transfer was a different contract and Defendants were entitled to both principal and interest payments for each transfer is unavailing, because it is premised on the idea that Defendants were entitled to any interest on their investment.  As noted above, the interest provisions of the promissory notes are unenforceable because they are against public policy.  Thus, Defendants' rights are not changed because they received more than their initial investment in a series of monthly payments rather than in one lump sum.  Therefore, the Court holds that the transactions made to Defendants in excess of their initial investments were not for any value, let alone reasonably equivalent value, thereby establishing as a matter of law, that element of Plaintiff's constructive fraud claims.   Because Plaintiff has conclusively established that the transfers were not made for value, Defendants are not entitled to the good faith defenses under federal and state law[9].  Accordingly, Plaintiff is entitled to summary judgment on this claim.

## V.      VCR Was Insolvent During the Relevant Time Periods

Defendants did not dispute any of the material facts presented by Plaintiff in her Motion and did not respond to Plaintiff's arguments in her Motion that VCR was insolvent at the time of

---

[9] All three of the affirmative defenses asserted by Defendants require an exchange for value *AND* that they took in good faith.  Because the Court determines that the alleged transfers did not involve the exchange of value, it need not reach the consideration of whether Defendants acted in good faith.

the transfers at issue.  Based upon Defendants' apparent concession of this element and the clearly demonstrated fact that VCR was operating at a loss during the relevant time periods, the Court finds that as a matter of law Plaintiff has satisfied both the federal and state standards for establishing insolvency.

## VI.     Transfers constitute an interest of the Debtor in property

Defendants likewise do not dispute any of the material facts presented by Plaintiff regarding whether the transfers constitute an interest in property of the debtor nor do they dispute Plaintiff's legal argument regarding why this constitutes an interest in real property.  Considering that Defendants do not dispute this element and Plaintiff's arguments regarding this element, the Court finds that Plaintiff has demonstrated as a matter of law that the transfers at issue constitute an interest of the Debtor in property.

## VII.    Plaintiff is not Entitled to a Money Judgment on her Fraudulent Transfer Claims

In addition to a finding that Plaintiff has met the elements of her fraudulent transfer claims as a matter of law, Plaintiff also requests that a money judgment be entered in her favor on these claims.  Plaintiff's fraudulent transfer claims based upon NMSA 1978 § 56-10-23 have a four year "look back" period and the claims based upon 11 U.S.C. § 548(a)(1) have a two year look back period.  Plaintiff's fraudulent transfer claims are calculated based upon the date that VCR filed for bankruptcy, February 22, 2010 ("Petition Date").  Plaintiff has generally alleged the amount of net winnings paid to Feld Defendants during the lifetime of their investments, but has not sufficiently detailed when these transfers occurred and the precise amounts paid to Feld Defendants during each transfer.  As noted above, Feld Defendants received more than one transfer of funds from VCR.  Plaintiff has failed to demonstrate the timing and amount of each allegedly fraudulent transfer.  While the Court has determined that Defendants are not entitled to

any of their net winnings, the transfers of the net winnings must have occurred during the statutory time period to be avoidable.  Accordingly, Plaintiff has not established as a matter of law that she is entitled to a money judgment on her four year fraudulent transfer and two year fraudulent transfer claims, because she has not demonstrated which transfers took place and what amount of money was transferred during the relevant time period.

**IT IS THEREFORE ORDERED** that Plaintiff's Amended Motion for Partial Summary Judgment against Defendants Andy and Julie Feld on the Trustee's Fraudulent Transfer Claims (**Doc. No. 501**) is hereby **GRANTED in Part**.  The Court shall enter the following conclusions of law in the Trustee's favor: (1) each of the transfers at issue was made with the actual intend to defraud creditors; (2) between at least January 1, 2005 and the Petition Date, VCR was insolvent and intended to incur debts beyond its ability to pay; (3) VCR received no value in exchange for the transfer of Net Winnings; and (4) each of the transfers at issue constituted a transfer of an interest of the debtor in property.

**IT IS FURTHER ORDERED** that Plaintiff's Amended Motion for Partial Summary Judgment is **DENIED in part**, to the extent that Plaintiff's requests a money judgment against Feld Defendants.  Plaintiff has not yet proven the amount and timing of the transfers as a matter of law, thus she has failed to demonstrate the amount of net winnings transferred during the relevant statutory time periods.  Therefore, Plaintiff is not entitled to a money judgment as to her fraudulent transfer claims.

_____
UNITED STATES DISTRICT JUDGE