IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

In Re:
THE VAUGHAN COMPANY, REALTORS

    Debtor(s).

JUDITH A. WAGNER,

    Plaintiff,                                           Master Case No. 12-cv-0817 WJ/SMV

v.
ABBAS ANSARI, et al.;                    (USDC Case No. 12-cv-0301 WJ/SMV)

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO QUASH
*SUBPOENAS DUCES TECUM* AND FOR A PROTECTIVE ORDER**

THIS MATTER is before the Court on Defendants Abbas Ansari and Peymaneh Pour's ("Defendants") Motion to Quash *Subpoenas Duces Tecum* and for a Protective Order [Doc. 996] ("Motion"), filed on August 15, 2014.  Plaintiff responded on August 29, 2014.  [Doc. 1014]. Defendants replied on September 12, 2014.  [Doc. 1039].  The Court, having considered the briefing and relevant law, and being fully advised in the premises, finds that the Motion is should be GRANTED IN PART and DENIED IN PART.

### Background

This case arises out of a massive Ponzi scheme perpetrated by Doug Vaughan through Vaughn Company Realtors ("VCR").  This adversary proceeding is one of many initiated by the Chapter 11 Trustee ("Plaintiff") seeking to recover payments made by VCR to parties who invested in VCR's promissory note program.  This case is also one of a group of adversary

proceedings in which the reference to Bankruptcy Court was withdrawn, thereby resulting in this matter proceeding in District Court.

Crucial to Plaintiff's claims, as well as to Defendants' defenses, are the amounts each Defendant invested with VCR, the amounts received from VCR, and the dates each transaction occurred. In some cases, Plaintiff (or her expert) was able to discern those data unequivocally by reference to VCR's records. In other cases, the Defendants have stipulated to the amounts and dates. But in some cases, such as this one, neither has occurred. Despite having conducted a significant amount of discovery, including interrogatories, requests for production, and requests for admission, the parties cannot agree on the relevant information.

This discovery dispute concerns third-party subpoenas that Plaintiff served on two banks.[1] The subpoenas seek to obtain electronic copies of "all bank statements, checks, deposit slips[,] signature cards[,] and offset items for all bank accounts held by [Defendants] from 1/1/2000 through 3/21/2010[.]" [Doc. 996-1] at 9, 17. Defendants object to the subpoenas and, in the alternative, seek a protective order. [Doc. 996]. Defendants object on the grounds that (1) the scope of the subpoenas is overbroad in that it encompasses irrelevant information, *id*. at 5–7; (2) Defendants have a privacy right in the information, *id*. at 4–5; and (3) the subpoenas were intended solely to harass them, [Doc. 1039] at 15–17.

## Law Regarding Motions to Quash Third-Party Subpoenas

Challenges to a third-party subpoena may be brought under Fed. R. Civ. 45(d)(3). However, "a party has no standing to quash a subpoena served on a third party, except as to

---

[1] Plaintiff served subpoenas on three banks. However, one bank has already responded that it has no responsive documents.

claims of privilege or upon a showing that a privacy issue is implicated." *EEOC v. Original Honeybaked Ham Co. of Georgia, Inc.*, No. 11-cv-02560-MSK-MEH, 2012 WL 934312, at *2 (D. Colo. Mar. 19, 2012) (unpublished) (quoting *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997)); *accord EEOC v. 704 HTL Operating, LLC*, No. 11-cv-0845 BB/LFG, 2012 WL 1216142, at *1 (D.N.M. April 3, 2102) (unpublished). Although relevance under Rule 26 is not listed as a consideration in Rule 45, "courts have incorporated relevance as a factor when determining motions to quash." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005); *accord Int'l Bhd. of Teamsters v. Frontier Airlines, Inc.*, 2012 WL 1801979, at *7 (D. Colo. May 16, 2012) (unpublished) (citing 9A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2452 (3d ed.); *see also 704 HTL Operating*, 2012 WL 1216142, at *3 (quashing third-party subpoena to the extent requested documents not discoverable under Rule 26).

The scope of discovery is broad and "is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) (internal quotation marks omitted). Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter . . . . subject to the limitations imposed by Rule 26(b)(2)(C)." "[A] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action."

3

*Williams v. Bd. of Cnty. Comm'rs*, 192 F.R.D. 698, 702 (D. Kan. 2000).  Considering that "[l]imitations on the discovery process necessarily conflict with the 'fundamental principle that the public has a right to every man's evidence,'" the Federal Rules broadly define the scope of discovery.  *Simpson v. Univ. of Colo.,* 220 F.R.D. 354, 356 (D. Colo. 2004) (internal ellipsis omitted) (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)).

The definition of relevance is broadly construed for purposes of seeking discovery. *Cardenas v. Dorel Juvenile Grp., Inc.,* 232 F.R.D. 377, 382 (D. Kan. 2005) ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party.").

> When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

*Simpson*, 220 F.R.D. at 359; *see also Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 685 (D. Kan. 1991) (stating that a party resisting discovery based on relevancy grounds bears the burden of explaining "how each discovery request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or burdensome").  However, when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.  *Williams,* 192 F.R.D. at 705.

**Analysis**

The Court finds that Plaintiff has established the relevance of the requested documents, in part. As previously stated, the amounts and dates of transfers to and from VCR are crucial to Plaintiff's claims and Defendants' defenses. Defendants' bank records may (or may not) contain that information. Plaintiff has been unable to get that information satisfactorily pinned down,[2] despite extensive discovery. *See* [Doc. 1014] at 4–6. It cannot plausibly be argued that there is no possibility that the requested documents would contain information relevant to Plaintiff's claims and Defendants' defenses. The Court finds, therefore, that the information sought is relevant and discoverable, at least in part.

However, the Court is concerned about the broadness of the subpoenas. They could be read as requesting information from bank accounts that could not possibly show transactions between Defendants and VCR, such as credit card accounts, CD accounts, and trust funds. The Court will modify the subpoenas so as to encompass only accounts from which funds could have been transferred to or from VCR or Vaughan Equities II, LLC ("VEII").[3] The Court will

---

[2] Defendants claim that Plaintiff "has the information she needs." [Doc. 1039] at 7. They argue, that by doing certain calculations, Plaintiff can discern how much Defendant Ansari invested. That argument is unpersuasive for several reasons. First, absent a stipulation between the parties, Plaintiff is under no obligation to accept Defendants' methodology. Second, absent a stipulation between the parties, Defendants could change their testimony and/or methodology prior to trial. Third, even if Defendants are right, absent a stipulation, Plaintiff has the right to confirm Defendants' testimony independently. The situation is analogous to a plaintiff in a personal injury case saying, "You have the report from my most recent medical examination, so you have no right to see my prior medical records." Even if the plaintiff is telling the truth, and the report from her most recent medical examination accurately reflects her past medical history, absent a stipulation between the parties, the defendant would be entitled to obtain her prior medical records to confirm the report.

[3] Defendant Ansari has asserted an offset based on his investment with VEII, another investment vehicle run by Doug Vaughan. Defendants claim that there were no direct transfers between Defendants and VEII. That may be true. But even if it is, absent a stipulation between the parties, Plaintiff is not obligated to accept Defendants' word on the issue.

therefore limit the scope of the subpoenas to checking, savings, and money market accounts held by the Defendants during the applicable time period, i.e., January 1, 2000 to March 21, 2010.[4]

As for Defendants' privacy concerns, the Court finds that the Stipulated Confidentiality Order [Doc. 766] previously entered by the Court is adequate to protect those concerns.

Defendants' argument that the subpoenas were intended solely to harass them is frivolous.

## Conclusion

The Court grants Defendants Motion to Quash . . . and for a Protective Order in part. Wells Fargo Bank and Bank of America shall respond to the subpoenas but only with respect to checking, savings, and money market accounts held by the Defendants during the applicable time period, i.e., January 1, 2000 to March 21, 2010. The banks' responses shall be produced within 21 days of receipt of this Order. The remainder of the Motion will be denied. All information produced by the banks, in whatever form, shall be subject to the terms of the Stipulated Confidentiality Order [Doc. 766], filed on March 11, 2014.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendants' Motion to Quash *Subpoenas Duces Tecum* and for a Protective Order [Doc. 996] is **GRANTED IN PART and DENIED IN PART**.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**

---

[4] Plaintiff's Response incorrectly referred to the time period as "January 1, 2000 through March 21, 20<u>00</u>." [Doc. 1014] at 4. As the Court assumed, this was a typographical error, which Plaintiff recently corrected. Errata [Doc. 1049].